UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH MORRIS, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-04-0423 |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
|     *Defendant*. | § | |

## ORDER

This matter is before the court on defendant Equifax Information Services, LLC's (Equifax's) renewed motion to strike plaintiff Kenneth Morris's expert (Dkt. 36). Having considered the parties submissions and arguments of counsel at a hearing on April 4, 2007, the court grants Equifax's motion.

### I.   Background

Plaintiff Kenneth Morris filed suit against Equifax and a co-defendant, CSC Credit Services, Inc.(CSC), in Texas state court in 2004 asserting violations of the Fair Credit Reporting Act (FCRA) and libel. Morris (who is a lawyer representing himself *pro se*), sued for damages caused by the appearance on his credit report of a delinquent Target charge account that Morris contends was solely his ex-wife's liability.

After removal to federal court, Morris settled with and dismissed CSC. Equifax moved for summary judgment on the ground that it had no duty to perform a "reinvestigation" under § 1681i of the FCRA. The district court granted Equifax summary

judgment on the grounds that CSC, not Equifax, owned Morris file and only CSC had the authority to modify information in Morris's file.[1]

Morris appealed. The Fifth Circuit reversed the dismissal of Morris's FCRA claim and remanded the case to the district court.[2] The Fifth Circuit stated that "[§] 1681i does not distinguish between the credit reporting agency (CRA) that 'owns' the consumer's credit file and the CRA that sells, or, to use Equifax's term, 'distributes' the consumer's credit file." *Morris*, 453 F.3d at 468. However, amendments to § 1681i that post-date Morris's claim distinguish between a CRA and a CRA "reseller." The court concluded that, prior to amendment, the FTC apparently considered § 1681i applicable the CRAs that were notified directly by the consumer, whether the CRA was an owner or reseller of the file. The court held that "the mere fact that a CRA does not own a consumer's file does not of itself necessarily relieve that CRA of the reinvestigation requirements of the FCRA, 15 U.S.C. § 1681i." *Id.* at 469.

Equifax also argued on appeal that although it is a CRA, it did not act as a CRA in this case because it did not "assemble" or "evaluate" consumer credit information in Morris file

---

[1] According to facts set forth in *Morris v. Equifax Info. Serv., LLC*, 457 F.3d 460, 466 (5th Cir. 2006), Equifax and CSC have a contract under which CSC and other affiliates store credit files in an Equifax-owned computer system known as ACROPAC. "Ownership" of such files is based on the residence of the consumer. Equifax owns the files for consumers living in some areas, and CSC or other Equifax affiliates own the files for consumers living in other areas. CSC pays Equifax a fee for inquiries into the ACROPAC system for CSC owned files.

[2] The Fifth Circuit affirmed the dismissal of Morris's libel claim.

within the meaning of § 1681a(f). Equifax did not expressly make this argument to the district court. Because the record did not adequately resolve the issue of whether Equifax acted as a CRA with respect to Morris, the Fifth Circuit remanded the case to the district court for resolution of that issue. *Id.* at 470.

Equifax's motion for summary judgment after remand is pending with the district court. The parties agree that the expert testimony that is the subject of Equifax's motion to strike is not relevant to the issues before the court on summary judgment.

## II.     Motion to Strike Morris's Expert

### A.     Standards for Admission of Expert Testimony

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The trial judge acts as a gatekeeper to ensure that an expert's testimony satisfies these criteria. *Daubert*, 509 U.S. at 598. The district court enjoys wide latitude in determining the admissibility of expert testimony, and the decision of the district court will not be disturbed on appeal unless manifestly erroneous. *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

**B.    Admissibility of Expert Testimony of David C. Horn**

Prior to his appeal, Morris timely designated David C. Horn as an expert in this case and served Horn's expert report dated December 29, 2004. Horn expresses two opinions in his report:

> (1) Defendants (Equifax and CSC), as CRAs, do not have adequate systems and procedures in place to perform a reasonable, proper and thorough "reinvestigation" of disputed information in an consumer report concerning a "joint" account and related "contractual liability," after receiving notice (and all relevant information) of such dispute from a consumer, in accordance with the FCRA (Section 611/1681i) and applicable case law; and
>
> (2) Defendants (Equifax and CSC), as CRAs, did not perform a reasonable, proper and thorough "reinvestigation" of disputed information ("joint" account status and related "contractual liability") in the Plaintiff's (Morris') consumer report, "after" the Defendants received notice (and all relevant information) of such dispute from Morris, in accordance with the FCRA (Section 611/1681i) and applicable case law.[3]

Equifax argues that Horn is not qualified to give these opinions, and the opinions are not reliable.[4]

### 1.    Horn's Qualifications

Horn is a CPA. He earned a B.S. in business administration from the University of Missouri in 1968. He has attended various professional seminars in the accounting, tax, finance, management, computer and real estate fields. He is a licensed real estate agent.

---

[3]   Horn Report, exhibit A to defendant's motion, at 20, 25-26.

[4]   The court questions whether Horn's opinions are relevant, given rulings by the Fifth Circuit. However, both sides insist that it is premature to address the relevance of the opinions before a ruling on what issues, if any, will survive summary judgment.

Horn was employed as an audit partner at Arthur Young (now Ernst & Young) from June 1968 through May 1982. He served as Chief Financial Officer of a real estate development corporation from June 1982 through June 1986, and conducted project management functions for two major investors in a large office building in downtown Houston from July 1986 until May 1989. He was next employed from 1993 until 1997 as an officer and treasurer of a publicly-traded home healthcare provider, responsible for all financial reporting. Horn is currently employed as an independent consultant under the d/b/a Quantum Interests, offering consulting services related to commercial real estate and "virtually any financially oriented project."[5]

Horn has no prior education, training, or employment in the credit reporting industry. He first began his study and analysis of the FCRA when he was hired by Morris in June, 2004. He has never testified at trial, or been ruled qualified by a court, as an expert on the FCRA. He has never conducted a reinvestigation of a consumer dispute under FCRA, or assisted a credit reporting agency in developing procedures for doing so. He has never conducted research or written on the credit reporting industry or the FCRA outside of the context of Morris's litigation.

Horn is a financial professional with extensive business experience. He is no doubt an expert on some things. "[A] CPA generally possesses the 'specialized knowledge' to qualify as a helpful expert witness under the proper circumstances. Whether an 'expert'

---

[5] Horn Report, at exhibit B (resume of David Horn).

qualifies to answer specific questions in a particular case is a different issue." *De Jager Const. Co. v. Schleininger*, 938 F. Supp. 446, 449 (W.D. Mich. 1996); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994) (noting that any witness may be allowed to opine based on observation and experience if a proper foundation is laid, but the term "police policies and practices" is so broad as to be devoid of meaning, "it is like declaring an attorney an expert in the 'law.'"). Nothing in Horn's background provides a foundation for admitting his testimony on what constitute reasonable procedures in accordance with the requirements of the FCRA.

### 2. Reliability/Factual Basis

In order to form the opinions he is being asked to give in this case, Horn reviewed the FCRA and all documents produced during discovery in this case and discussed the case with Morris.[6] He also read case law involving FCRA claims.[7] In essence, Horn's opinions are legal conclusions. It will be the jury's job to decide if Equifax complied with the FCRA. It will be the court's job to provide the jury with instructions on the law.

A witness may testify on an ultimate issue to be decided by the trier of fact. FED R. EVID. 704. But there is a distinction between offering an opinion as to determinative facts, and offering a legal conclusion that simply tells the jury how to decide the case. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (allowing an expert to give legal

---

[6] Horn Report, at 5.

[7] Horn Report, at 15-18.

conclusions drawn from the evidence both invades the court's province and is irrelevant). Here, the question of what Equifax actually did will be presented to the jury through documents and fact witnesses. Horn's testimony will not assist the jury in understanding what Equifax did in connection with its "reinvestigation."

Moreover, Horn's report is highly conclusory. It criticizes Equifax's systems and procedures as inadequate, but does not specify what those systems and procedures were, or in what way they were deficient. In fact, he notes in his report that he did not have sufficient documents from Equifax to analyze its systems and procedures. Horn states: "I cannot definitively determine what system and procedures, if any, Equifax has in place to perform and complete such 'reinvestigations,' or what 'reinvestigation' procedures it expects SCS to perform on its behalf."[8] Thus, the report lays no foundation for Horn's opinions regarding the reasonableness of Equifax's systems and procedures and is patently unreliable.

### III. Conclusion

For the reasons discussed above, Equifax's motion to strike the testimony of David Horn (Dkt. 36) is granted.

Signed at Houston, Texas on April 10, 2007.

Stephen Wm Smith
United States Magistrate Judge

---

[8] Horn Report, at 2.